# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-1221

**NICHOLAS E. BAEZ**

     Plaintiff(s),

v.

**THE CITY OF COMMERCE CITY**, a Colorado Municipal Corporation;
**TROY SMITH**, in his individual capacity and in his official capacity as Chief of the Commerce City Police Department; and
**LOWELL RICHARDSON,**  in his individual capacity and in his official capacity as Interim-Chief and Deputy-Chief of the Commerce City Police Department; and
**BRIAN MCBROOM**, in his individual capacity and in his official capacity as City Manager for the City of Commerce City.

     Defendant(s).

---

## COMPLAINT AND JURY DEMAND

---

     COMES NOW Plaintiff, NICHOLAS E. BAEZ ("Plaintiff" or "Baez"), by and through his legal counsel, the Law Office Of Daniel Schaefer, LLC., and hereby submits his Complaint and Jury Demand.

## I.    PARTIES AND VENUE

1.     The Plaintiff is an individual who resides in the State of Colorado.

2.     The Defendant, The City of Commerce City (hereinafter referred to as "Commerce City") is a Colorado municipal corporation located at 7887 E. 60th Avenue, Commerce City, Colorado 80022.

3.     The Defendant, Troy Smith (hereinafter referred to as "Smith") was at all relevant times, Chief of the Commerce City Police Department or Deputy City Manager, located at 7887 E. 60th Avenue, Commerce City, Colorado 80022.

4.     The Defendant, Lowell Richardson (hereinafter referred to as "Richardson") was at all relevant times, either Deputy-Chief or Interim-Chief of the Commerce City Police Department located at 7887 E. 60th Avenue, Commerce City, Colorado 80022.

5.     The Defendant, Brian McBroom (hereinafter referred to as "McBroom") was at all relevant times, City Manager for the City of Commerce City located at 7887 E. 60th Avenue, Commerce City, Colorado 80022.

## II.     <u>JURISDICTION & VENUE</u>

6.     This action arises under the Constitution and laws of the United States and 42 U.S.C. §1983, as well as §§2000e et seq. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343. Jurisdiction supporting Plaintiff's claim for attorney's fees is conferred by 42 U.S.C. § 2000e-5(k).

7.     Venue in the United States District Court is proper in that the action complained of took place in the State of Colorado, City of Commerce City, and all the parties, upon information and belief, are residents of the state.

### III.    <u>GENERAL ALLEGATIONS</u>

8.    Baez serves as a Police Officer with the Commerce City Police Department ("CCPD") and has done so since August 18, 2014. As a CCPD Officer, Baez received no less than 10 positive log entries into his personnel files, the majority of these were based on or direct commendation from members of the public regarding Baez' interaction with them while on duty.

9.    During the course of Baez's employment Commerce City also employed Deputy Chief Lowell Richardson, who was promoted to the Interim-Chief from March 2016 – 2017, Chief Troy Smith as Police Chief from 2013-2016 and Deputy City Manager thereafter, and Brian McBroom as the City Manager of Commerce City.

10.    Baez started work on or about August 18th, 2014 and per City Charter Chapter XXI, Sec.21.20(b) his probationary period of one year should have expired August 18th, 2015.

11.    Due to maliciously false, slanderous and discriminatory allegations against Baez on or about April 2015, Baez was placed on paid administrative leave on May 1st, 2015, per the order of Defendant Smith.

12.    An internal investigation was conducted into the allegations against Baez which included conduct unbecoming, harassment, unsatisfactory job performance.

13.    Baez was first interviewed on or about May 21st, 2015 regarding allegations of misconduct, but no specific allegation was presented to him, thereby robbing him of any meaningful way to defend himself or to contradict any allegation. Instead the questions were directed in a nebulous manner, making it impossible to specifically address them.

14.    Shortly after this interview, Baez was contacted by Commander Chatman ("Chatman"), who explained to him based on the initial findings and the manner of the

investigation, he would be forced to recommend his (Baez) termination. However, Chatman stated his recommendation was A) not based on direct evidence, but, rather on "generalities" of verbal statements; B) that such "evidence" would not "hold up to probable cause" standard; C) that he was "forced by Command Staff" (not verbatim) to be in a position to make this recommendation; and D) he was having this meeting with Baez because he, in essence, did not believe the "behind the scenes" workings were appropriate in his case.

15.      After being made aware of the complainants, Officer John Reinhart, Officer Rick Evans, and Officer Shauna Flores, Baez raised grave concerns regarding these individuals due to their alleged unethical behavior prior, to include racial harassment, racial discrimination, and other unlawful conduct. It was the very same people Baez was attempting to report on for violations of policies prior, but was not able to due to his placement on administrative leave. In essence, Baez was the victim of a racially motivated smear campaign by officers who felt he may file valid complaints against them.

16.      Once made aware of the conduct of these complainants and the serious issues regarding their credibility, Chatman advised Baez to draft a written Memorandum, outlining these issues, as they were pertinent to the investigation. He would then reconsider the evidence. However, once provided with the Memorandum, Chatman, notably also a Black Officer, was removed from the Investigation and discipline review.

17.      Baez, nonetheless, provided this Memorandum to the Defendants via his chain of command on or about June 16th, 2015. This memorandum outlined serious allegations against the complainants, revealing their motives, and the racial bias underlining their complaints.  This memorandum also outlined evidence as to the falsity of their allegations against Baez.

18.     The memorandum was a formal complaint against these individuals for policy violations to include open racial discrimination, harassment, conduct unbecoming, lewd comments to co-workers and public, amorous relationship between supervisors and subjects, and unsatisfactory job performance.

19.     A follow up investigation was conducted during which all parties were re-interviewed. As a result of the additional information provided, upon information and belief, all allegations made by Baez led to sustained policy violations for the officers involved. Specifically, Richardson found Officer Flores guilty of unbecoming conduct for comments and statements deemed "…unprofessional, talking about sex, race and ethnicity." Richardson further sustained allegations against Officer Evans for making inappropriate racist remarks in the presence of a member of the public, stating a citizen of Indian descent had a "terrorist name." Additionally, former Officer Reinhart was sustained on policy violations and, of note, later was charged with multiple counts of unlawful sexual contact by the Adams County District Attorney Office (unknown if specifically related to the allegations made by Baez).

20.     In all, upon information and belief, a total of six (6) officers were disciplined for policy violations, which included an intimate relationship between training officer and recruit, racial slurs and discrimination, failure to report and other violations. At least three of the officers involved in this investigation are no longer employed by Commerce City, which speaks toward their credibility for this complaint.

21.     Notwithstanding these findings against the original complainants, the serious doubts discovered as to the veracity of the original complaint against Baez, and notwithstanding all other evidence (physical and circumstantial) exculpating Baez, produced by witnesses and

Baez himself, Richardson sustained allegations of untruthfulness (later rescinded), conduct unbecoming, harassment, and unsatisfactory job performance against Baez.

22.     In essence, Richardson intentionally disregarded all exculpatory evidence and evidence showing clear racial bias on the part of the complainants in making the allegations, and sustained allegations against Baez simply because of a perception issue. However, the perception issue against Baez in the investigation revealed no actual evidence of misconduct, but, rather "feelings" about Baez being "creepy", and/ or feelings that "something would be said or gestured" (by Baez) when Baez would pass people. All these allegations had only one common thread, Baez is a Black man and the remaining parties are white, with significant prejudices against Black people.

23.     In fact, the entire investigatory file is void of any specific, unrebutted allegation against Baez for any conduct that would be violating any policy. Most witnesses testified only to unsubstantiated hearsay and no direct knowledge, or to alleged events which happened years prior to Baez even being employed by Commerce City, leaving as only remaining logical conclusion they complained because of Baez appearance, rather than actions.

24.     Hence, upon information and belief, in the absence of sustainable actual evidence, Richardson sustained allegations of harassment, unsatisfactory performance and unbecoming conduct merely on the "feeling" of some witnesses that Baez was creepy based on his race, which can only be described as a racist finding perpetuating the "Scary Black Man" stereotype.

25.     This racial bias is obvious if one studies the investigation file. During the follow up interview of July 7th, 2015, it was insinuated to Baez his high level of intelligence and articulation may make it easier for him to fabricate details of racial/ color discrimination. In other

words, because Baez is an educated Black man and the other Officers are white, he would have a propensity to lie. This absurd and facially racially bias sentiment is well researched in our society as a perpetuation of the "Scary Black Man" stereotype. It has no bases in truth, and is a mere expression of the underlying emotional hatred displayed toward Black Americans to this date. However, this sentiment, not facts or truth lead to the sustained allegations against Baez here.

26.     This racial bias is also obvious when one compares the discipline issued to each officer involved. Baez was threatened with termination (later converted to a 60 hour unpaid suspension) for the allegation of being creepy and making inappropriate comments to co-workers, while all other personnel did not receive such harsh discipline. Even though some of the sustained allegations against other officers were identical or worse than the allegations against Baez, he received the harshest punishment. The only difference between the other officers involved and Baez is he is a Black man, while all others are white, which is racial discrimination.

27.     Further indicative of the racial discrimination in violation of 42 U.S.C. 2000e et seq. is the fact Baez was never afforded due process by Commerce City as the other involved officers were. For example, Baez was not permitted to see the entire investigation file in order to prepare his defense prior to his first pre-disciplinary hearing with Smith. Only after the hearing was Baez permitted to have access to the file, from which he was expected to respond meaningfully within mere days, which is impossible and discriminatory on its face.

28.     In a Memorandum of Contemplated Discipline, issued by Smith on September 1st, 2015 (again prior to Baez even having access to his file), Smith made factual findings of misconduct based on generalities of people feeling Baez was "creepy" and that he made "the same type of comments" about women Officer Flores had alleged.  However, no specific

comments are given, nor any explanation of how they violated policy. Notably this was the very

same Officer (Flores), a woman, that was later disciplined for making lewd and racial remarks.

29.    Smith accused Baez of "using street language," implying that he, as a Black man

would use foul, vulgar or inappropriate language referred to as "street language." This is highly

racially charged and discriminatory, especially given it is made to a highly educated Black

Officer and, upon information and belief, was not equally given to his colleagues accused of the

same language use, but who happen to be of the white race.

30.    Further, Smith and Richardson took words of white officers (notably three no

longer work at CCPD and one was charged criminally) over the word and evidence presented by

Baez, an employee with an exceptional record. They chose to substantiate allegations based on

the mere belief Baez had "selective memory" and on the stereotypical feelings of his white

colleagues that Baez is creepy and too intelligent for a Black Man.

31.    Upon receiving the investigatory file, Baez did, nonetheless provide

comprehensive written rebuttals to the allegations against him which were provided to Smith on

September 16th, 2015. In the rebuttals, Baez again outlined the racial bias of Officers Evans,

Reinhart and Flores. The rebuttals also provided specific evidence to contradict the allegations

against truthfulness violations purported by Smith and Richardson against Baez.

32.    Given the disparaging, racially motivated treatment against Baez, Baez filed a

formal complaint of racial discrimination with the Equal Employment Opportunity Commission

("EEOC") on or about September 29th, 2015 against Commerce City.

33.    Notwithstanding the undeniable evidence in front of Smith, and notably after

Baez had filed his complaint with the EEOC, Smith issued his letter of final discipline against

Baez. While acknowledging that there was no evidence that Baez had lied, he only rescinded the truthfulness violations, but re-affirmed all other allegations in spite of the overwhelming amount of exculpatory evidence and Baez's denial of the conduct complaint against him. However, Smith readily disregarded evidence of misconduct, untruthfulness and racial bias of the complainants. Smith's findings were clearly unsupported by the evidence, as Baez was held not to have lied, but the complainants obviously had. Hence, it is illogical Baez would be sustained on any of the allegations unless there was an alternative motive to do so. In this case, the only logical answer is the EEOC complaint and the racial bias of Richardson and Smith.

34.     In his Notice of final discipline, Smith specifically states, "…[t]o the extent that you believe my behavior, or any other member of City staff, to be discriminatory or harassing, you have a duty under Employee Policy 1.1 to report it to a supervisor or the Human Resources department."  This is prima facia evidence of Smith blatantly taunting Baez's complaint against the City and him for racial discrimination and harassment. Smith was intimately aware of the EEOC complaint and, hence, was making fun of Baez for filing such a complaint, which is harassment within itself.

35.     Additionally, against City Charter regulations, Smith extended Baez's probationary period as added discipline. Commerce City Charter, Chapter XXI, Sec. 21.20. (b) states in part, "… All members of the bargaining unit shall be subject to a one year probationary period. After completion of the probationary period, no member of the bargaining unit may be disciplined or discharged except for just cause." However, without legal justification or right to do so, Smith extended Baez's probationary period. First, he was placed with a "senior officer for reorientation training." This training was allegedly designed to give Baez the opportunity to

prove he was able to perform solo duty, something he had already proven prior. Then, after successfully completing this new training period, Smith extended the probationary period an additional 3 months. This was a punishment for filing a complaint against Commerce City. Additionally, this was racially motivated disparaging treatment as, upon information and belief, no white officer was subjected to the same treatment at Commerce City and none of the other officers sustained of similar or worse violations were subjected to such treatment or extensions of probationary time.

36. This extension of the "probationary period" also directly resulted in the denial of otherwise guaranteed due process rights for Baez. If Commerce City had honored their own Charter regulations, Baez would have become a Career Service Employee with full benefits on August 18th, 2015. Upon this date the City Charter and the Collective Bargaining Agreement guarantees him to receive no discipline without just cause (i.e. due process of the law). However, when Baez attempted to appeal the Chief's decision through the established career service regulations (i.e., appeal to the City Manager and be granted a Career Service Hearing), he was denied by McBroom the right to appeal to him on the account that this right was not afforded to Baez as he was still on probationary status. Hence, McBroom with full knowledge of the circumstances, unlawfully failed to treat Baez the same as all the other white employees similarly situated and deprived Baez of due process of the law.

37. Baez was then returned to work patrol duties under Sergeant Trujillo. Following his completion of the ordered extended probation period on February 1st, 2016, Baez received an evaluation by Trujillo regarding his performance. At the time, Trujillo communicated to Baez

that based on his observations and accounting for the sustained allegations against him, Baez was to receive an evaluation of "meets expectations" and drafted this evaluation.

38.     After Trujillo drafted the evaluation, Trujillo was summoned to Deputy Chief Richardson's office. Richardson handed Trujillo a redlined version of Trujillo's evaluation regarding Baez and requested Trujillo to change the evaluation to "below expectations." Trujillo openly disagreed with Richardson and told him he was objecting and opposing the change as Baez had earned the evaluation as drafted.

39.     In spite of the arguments against change, Richardson ordered Trujillo to change Baez's evaluation to "below expectations." As reason, Richardson stated to Trujillo that what he (Trujillo) did not understand was, "we (Commerce City) are going to pay this guy (Baez) out anyways" (not completely verbatim). While not specifically aware of the filed EEOC complaint, Trujillo took this comment to mean that the City would be or had been sued by Baez for racial discrimination and the ordered action was in relation or a reaction to that complaint.

40.     Hence, Richardson made a direct reference to the EEOC complaint and to Baez's written notifications that he was contemplating a possible suit for discrimination. Further, Richardson's statement to Trujillo was an admission of guilt, in that Richardson and/or other defendants felt responsible for the violations complained against them and felt that they would be held responsible to pay penalties. Lastly, the changing of the evaluation was directly linked to Baez's rightful complaint to the EEOC, a discriminatory and retaliatory action in violation of 42 U.S.C. 2000e-3 et seq.

41.     This change of Baez's evaluation had a direct negative effect on his career in Commerce City, as any "below expectations" evaluation leads to a special evaluation period and

prohibits the employee from even applying for promotion or other desirable special assignments. Further, this kind of evaluation has a significant impact on the contractual pay raises of an employee and can lead to firing without cause. Hence, due to Richardson's conduct, which was, upon information and belief, done with full knowledge and approval of Smith and McBroom, Baez was further discriminated and fiscally damaged.

42.     On February 25th, 2017, Baez received the commonly referred to EEOC "right to sue" letter, which gave him permission to pursue this action within 90 days of receipt.

## IV.    CAUSES OF ACTION

## FIRST CAUSE OF ACTION – 42 U.S.C. §1983 FOURTEENTH AMENDMENT VIOLATION – DEPRIVATION OF PROPERTY INTEREST WITHOUT DUE PROCESS v. ALL DEFENDANTS

43.     Plaintiff hereby incorporates by reference all averments in this Complaint.

44.     The Fourteenth Amendment provides that no state may deprive a person of life, liberty, or property without due process of law. (See, generally U.S. Const. amend. XIV, § 1). Absent an emergency, an individual generally must be provided some kind of process before he is deprived of one of these protected interests.

45.     Property interests are created and defined by "existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." (*Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577). Here, the Commerce City- City Charter and the Collective Bargaining Agreement specifically creates such property interest for Plaintiff. Specifically, by

the City Charter, if applied correctly, Plaintiff would have been a "Career Service Employee" as of August 18th, 2015. His employment began August 18th, 2014 and continues to this day. While being placed on administrative leave with pay, such leave is not disciplinary in nature and hence does not toll any probationary period. Further, neither City Charter, nor the Collective Bargaining Agreement permits a "tolling" of the probationary period. Plaintiff, therefore, had an established property right in his continued uninfringed employment and income therefrom as a public employee has a property interest in his continued employment where "state or local law creates a sufficient expectancy of continued employment." (See *Driggins v. City of Okla. City, Okla.*, 954 F.2d 1511, 1513 (10th Cir. 1992)).

46.    Defendants collectively and severally deprived Plaintiff from his right to due process. First, by not giving him the opportunity to respond to specific allegations, thereby denuding him of any possibility of a meaningful clearance hearing of his name. Second, Defendants failed to provide meaningful access to the allegations or the investigation file, only granting access after an initial decision was formed, thereby depriving Plaintiff of a meaningful way to respond to the allegations or the proposed discipline. Third, Defendants purposefully deprived Plaintiff of the established Career Service Status and the due process hearings required by City Charter, thereby openly violating its own Rules regarding due process and depriving Plaintiff of a meaningful and unbiased chance to clear his name.

47.    Plaintiff's property interest outweighs the Defendants' interest in regulating that right as set forth in the 14th Amendment of the U.S. Constitution.

48.    Defendants' conduct violated clearly established rights belonging to Plaintiff, of which reasonable persons in Defendants' position knew or should have known.

49.     Defendants' acts were done under color of state law.

50.     A municipality is liable for the single unconstitutional act of a final decision/policy-maker. Here, Deputy Chief Richardson, and Chief Smith were the final decision/policy-makers by virtue of their duties and responsibilities as set forth by Commerce City Charter, the Collective Bargaining Agreement, Municipal Code, the authority and/or responsibility as delegated to him by the City Manager, the Colorado Constitution, and the general laws of the State of Colorado.

51.     The City of Commerce City as a municipality is liable in this case because Mr. McBroom, as the City Manager, ratified and approved Chief Smith's and interim Chief Richardson's decision regarding the extension of the probationary period, and the change of the evaluation and the sustained findings. Further, Commerce City is also liable as a municipality for the unconstitutional acts of Chief Smith and Interim Chief Richardson because the Chief of Police is a final decision maker with final policy-making authority relating to the policy which the Chief promulgated, administered, investigated, and enforced.

52.     Defendants engaged in the conduct described by this Complaint intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's federally protected constitutional rights.

53.     Defendants' conduct proximately caused significant injuries, damages and losses to Baez. Specifically, he has suffered loss of wages, loss of promotional opportunity, loss of opportunity for special assignments, loss of benefits, loss of seniority, other economic losses, emotional pain, suffering, humiliation, inconvenience, emotional distress, mental anguish, and loss of enjoyment of life.

54.     The actions of the Defendants violate the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

## SECOND CAUSE OF ACTION – 42 U.S.C. §2000e-2 - UNLAWFUL EMPLOYMENT PRACTICES v. ALL DEFENDANTS

55.     Plaintiff hereby incorporates by reference all averments in this Complaint.

56.     The Equal Employment Opportunities Act prohibits employers from engaging in discriminatory action with respect to an employee's "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." (See 42 U.S.C. §2000e-2(a)(1)).

57.     Here, the evidence is clear that all Defendants jointly and severally, while acting under full color of authority of the City of Commerce City engaged in conduct that was discriminatory against the Plaintiff based on his race and color. Specifically, Defendants treated only Plaintiff differently from all other white officers involved in this incident. Plaintiff received harsher punishments, and was sustained on mere rumors and conjecture rather than evidence, some of which within itself was racist in its very nature (i.e. the Black Man is creepy, feeling he makes gestures when no one is looking). Further, Defendant Smith made direct racial discriminatory remarks toward Plaintiff's use of language as "street language", thereby referring to his race and color, a blatantly racist remark. Lastly, Plaintiff was sustained on violations even though he was held to be truthful in the investigation but denied the misconduct, and even though his performance evaluation held him "above expectations" in the field of honesty and integrity.

58.     Additionally, only Plaintiff was deprived of his Career Service status, was placed

on administrative leave, and received monetary damage in loss of compensation due to the action

of the Defendants. All other white officers involved were treated differently, in a less harsh

manner, none were threatened with termination.

59.     Defendants' conduct violated clearly established rights belonging to Plaintiff, of

which reasonable persons in Defendants' position knew or should have known.

60.     Defendants' acts were done under color of state law.

61.     A municipality is liable for the acts of its agents acting within their scope of

employment. Here, Deputy Chief Richardson, and Chief Smith were the decision makers by

virtue of their duties and responsibilities as set forth by Commerce City Charter, the Collective

Bargaining Agreement, Municipal Code, the authority and/or responsibility as delegated to him

by the City Manager, the Colorado Constitution, and the general laws of the State of Colorado.

62.     The City of Commerce City as a municipality is liable in this case because Mr.

McBroom, as the City Manager, ratified and approved Chief Smith's and interim Chief

Richardson's decision to regarding the extension of the probationary period, and the change of

the evaluation as well as the deprivation of the career service appeals, and the sustaining of

violations merely based on rumors.

63.     Defendants engaged in the conduct described by this Complaint intentionally,

knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's rights.

64.     Defendants' conduct proximately caused significant injuries, damages and losses

to Baez. Specifically, he has suffered loss of wages, loss of promotional opportunity, loss of

opportunity for special assignments, loss of benefits, loss of seniority, other economic losses,

emotional pain, suffering, humiliation, inconvenience, emotional distress, mental anguish, and

loss of enjoyment of life.

65.     The actions of the Defendants violate the 42 U.S.C. § 2000e-2 et seq.


**THIRD CAUSE OF ACTION – 42 U.S.C. §2000e-3 – OTHER UNLAWFUL**

**EMPLOYMENT PRACTICES v. ALL DEFENDANTS**

66.     Plaintiff hereby incorporates by reference all averments in this Complaint.

67.     The Equal Employment Opportunities Act prohibits employers/ employees from

engaging in discriminatory action against any "…of his employees … because he has opposed

any practice made an unlawful employment practice by this subchapter, or because he has made

a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or

hearing under this subchapter." (See 42 U.S.C. §2000e-3).

68.     Here, the evidence is clear that Plaintiff filed a formal charge against the City of

Commerce City for racial discrimination. The Defendants were notified of such charge and were

notified by Plaintiff that he opposed the racially discriminatory slurs, practices and actions by

fellow police officers.

69.     Notwithstanding these facts, Defendant Richardson specifically ordered the

changing of an evaluation, over the objections of the actual supervisor of Plaintiff. This change

was commented on, which Trujillo understood to be in direct response of Plaintiff filing his

complaint, which Richardson specifically commented on and appeared to be completely

indifferent to the fact he was violating someone's rights (i.e. "we are going to pay this guy out

anyway"). This change was ratified by Smith and McBroom in their capacities of supervisors of Richardson, hence making them equally liable for the discriminatory action.

70.    Defendants' conduct violated clearly established rights belonging to Plaintiff, of which reasonable persons in Defendants' position knew or should have known.

71.    Defendants' acts were done under color of state law.

72.    A municipality is liable for the acts of its agents acting within their scope of employment. Here, Deputy Chief Richardson, and Chief Smith were the decision makers by virtue of their duties and responsibilities as set forth by Commerce City Charter, the Collective Bargaining Agreement, Municipal Code, the authority and/or responsibility as delegated to him by the City Manager, the Colorado Constitution, and the general laws of the State of Colorado.

73.    The City of Commerce City as a municipality is liable in this case because Mr. McBroom, as the City Manager, ratified and approved Chief Smith's and interim Chief Richardson's decision  regarding the change of the evaluation.

74.     Defendants engaged in the conduct described by this Complaint intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's rights.

75.    Defendants' conduct proximately caused significant injuries, damages and losses to Baez. Specifically, he has suffered loss of wages, loss of promotional opportunity, loss of opportunity for special assignments, loss of benefits, loss of seniority, other economic losses, emotional pain, suffering, humiliation, inconvenience, emotional distress, mental anguish, and loss of enjoyment of life.

76.    The actions of the Defendants violate the 42 U.S.C. § 2000e-3 et seq.

**FOURTH CAUSE OF ACTION – ACTION IN TORT – TORTIOUS INTERFERENCE**

**IN CONTRACTUAL RELATIONSHIP v. ALL INDIVIDUAL DEFENDANTS**

77.    Plaintiff hereby incorporates by reference all averments in this Complaint.

78.    As a Police officer in Commerce City, Plaintiff enjoyed the privilege of the Collective Bargaining Agreement, which is a contractual ratification of his right to work in Commerce City.

79.    Here, Defendants in their individual capacities interfered in the contractual relationship between Plaintiff and the City of Commerce City. Specifically, Defendants' actions extended probationary period unlawfully by almost 6 months. This deprived the Plaintiff from enjoying the contractually guaranteed Career Service Status of Article 9 of the Collective Bargaining Agreement between the City of Commerce City and Fraternal Order of Police, Lodge 19 as the Bargaining Unit.

80.    Plaintiff would have enjoyed the opportunity of due process, special assignments, seniority, pay increases, and other benefits. All such benefits were interfered with by the Defendants' actions.

81.    Defendants engaged in the conduct described by this Complaint intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's protected contractual rights.

82.    Defendants' conduct proximately caused significant injuries, damages and losses to Baez. Specifically, he has suffered loss of wages, loss of promotional opportunity, loss of opportunity for special assignments, loss of benefits, loss of seniority, other economic losses,

emotional pain, suffering, humiliation, inconvenience, emotional distress, mental anguish, and loss of enjoyment of life.

83.    The actions of the Defendants violate the City Charter, and the Collective Bargaining Agreement, and, hence, the contractual relationship between Plaintiff and Commerce City.

## FIFTH CAUSE OF ACTION – 42 U.S.C. §2000e-5(k) – ATTORNEY FEES v. DEFENDANT COMMERCE CITY

84. Plaintiff hereby incorporates by reference all averments in this Complaint.

85. Under the Equal Employment Opportunities Act "…the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs,.." (See 42 U.S.C. §2000e-5(k)).

86. Plaintiff respectfully requests reasonable attorney fees in accordance with this statute if held to be prevailing party.

## V.    PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Court enter judgment for the Plaintiff and against the Defendants and award to the Plaintiff:

a.    injunctive relief requiring the Defendants to remedy all adverse employment actions taken against the Plaintiff by the Defendants, including, but not limited to, an order reinstating the Plaintiff's original evaluation to full force and effect, to reverse the racially motivated, discriminatory findings on the Personnel Investigation #15.02 to

"exonerated" and an order requiring the Defendants to cease and desist from any future

retaliation against Plaintiff;

b.  damages for all injuries suffered by the Plaintiff, including, but not limited to, damages

for loss of income, loss of promotional opportunities and retirement benefits, loss of

professional and career opportunities, injury to reputation and emotional distress;

c.  punitive damages;

d.  prejudgment and post judgment interest;

e.  costs and reasonable attorney fees; and

f.  such other and further relief as this Court deems just and proper.


Dated May 18th, 2017,

/s/ Daniel Schaefer
**Daniel B. Schaefer, Esq.**
The Law Office Of Daniel Schaefer
14650 Benton Street
Broomfield, CO 80022
Telephone: (720) 206-7894
E-mail: daniel@danschaeferlaw.com
Attorney for Plaintiff Nicholas Baez